UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HERBERT ROY ZUCKER

                          Plaintiff,

       -against-


HSBC BANK, USA, PHH MORTGAGE
CORPORATION, and NASSAU COUNTY
RECORDER OF DEEDS,[1]


                         Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

17-CV-2192 (DRH) (SIL)

**APPEARANCES:**

**For Plaintiffs:**

**The Law Offices of Christopher Thompson**
33 Davison Lane East
West Islip, New York 11795
By:    Christopher Thompson, Esq.

**For Defendants HSBC Bank USA< National Association and PHH Mortgage Corporation:**

**Ballard Spahr LLP**
919 Third Avenue
New York, New York 10002
By:    Adam P. Hartley, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Herbert Roy Zucker ("Zucker" or "Plaintiff") commenced this action against

HSBC Bank, USA, National Association ("HSBC"), PHH  Mortgage Corporation ("PPH")

(collectively "Defendants") and the Nassau County Recorder of Deeds asserting a claim pursuant

to Article 15 of the N.Y. Real Property Actions and Proceedings Law ("RPAPL") to cancel and

strike a mortgage recorded on or May 24, 2006 for property located at Beechwood Manor Old

---

[1] The Clerk of Court is directed to amend the caption as set forth to reflect the correction names of PPH and
HSBC.

Tappan Road, Glen Cove, N.Y. ( the "Property). Plaintiff also seeks to recover damages for acts on the part of PPH allegedly in "violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. ("TCPA")", "the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq ("FDCPA")", "NY GBL Section 349", "TILA, RESPA, and the Frank Dodd Act," and for common law Slander of Credit and Intentional Infliction of Emotional Distress." (Comp. ¶¶ 6-7, 9.)

Presently before the Court are (1) Defendants' motion to dismiss, and (2) Plaintiff's cross-motion to amend the Complaint. For the reasons set forth below, Plaintiff's motion to amend the complaint consistent with the proposed amended pleading submitted by Plaintiff is granted, and Defendants' motion to dismiss is granted in part and denied in part as to that Amended Complaint.

## BACKGROUND

I.     **The Complaint**

The following allegations are taken from the Complaint as originally filed and presumed true for purposes of the motion to dismiss.

### A.  The Mortgage

On April 27, 2006, Plaintiff "allegedly" executed and delivered a mortgage on the Property to Mortgage Electronic Registration Systems, Inc. as nominee for HSBC Mortgage Corp. ("Mortgage Corp.") in the amount of $2,300,000.00. The mortgage was recorded in Nassau County. The mortgage was assigned to Mortgage Corp., which assignment was recorded on November 9, 2009. The mortgage was modified by a modification agreement recorded on November 18, 2009. The mortgage, as modified, was assigned to HSBC by assignment recorded

on October 7, 2011. Neither HSBC nor PHH notified Plaintiff of a transfer in ownership and/or servicing of the Loan (Comp. ¶¶ 9-12, 19.)

### B.  The Foreclosure Proceedings

On October 6, 2009, Mortgage Corp. filed a summons and complaint under Index No. 20370/2009 in Supreme Court, Nassau County against Zucker and accelerated the entire amounts due on the mortgage. In August 2013, the Nassau County Court dismissed the foreclosure action and cancelled the notice of pendency. No other foreclosure action was commenced by HSBC following that dismissal.[2] Zucker asserts that as more than six years have passed since the acceleration of the note on October 6, 2009, the six year statute of limitations to enforce the mortgage expired on October 6, 2015. (Comp. ¶¶ 14-18; 58-65.)

### C.  Collection Efforts

It is alleged that after the statute of limitations expired, PHH "began contacting Plaintiffs [sic] by mail and by telephone in an effort to collect the time-barred debt" from Plaintiff and began reporting a $1,434,078.45 debt to Credit Reporting Agencies as a valid debt owed by Plaintiff . Plaintiff received approximately 600 calls to his home and cellular telephone number from PHH, which call were placed using an "automated telephone dialing system" or "autodialer." PPH initiated the call without the "prior express consent" or "prior express invitation or permission" of Plaintiff and the call were not made for emergency purposes. It is alleged PHH caused Plaintiff's telephone to ring or engaged Plaintiff in telephone conversation "repeatedly or continuously with the intent to annoy, abuse or harass Plaintiffs [sic] at the called

---

[2] The Court notes that whereas paragraph 15 of the Complaint state that the foreclosure action was dismissed in August 2013, paragraph 64 states it was dismissed on or about January 4, 2014.

number." It is further alleged that PHH sent "threatening collection letters asserting false and misleading information' and that from October 2015 to present PHH sent letters to Plaintiff, up to four times per month, regarding a variety of mortgage payment and home owner related issues. The foregoing actions continued despite PHH knowing the mortgage debt was time-barred. (Comp. ¶¶ 26-37; 78-81, 93-100.)

## II.     The Proposed Amended Complaint

The proposed amended complaint ("PAC") contains the following additional factual allegations.

Plaintiff, owner of the Property, was given a Loan and Mortgage Modification Agreement dated August 19, 2013 (the "LMMA"). Although he signed the LMMA, Plaintiff never received an executed copy back from HSBC and it was never recorded. Plaintiff "attempted to make the first three payments under the [LMMA]," but they were "never negotiated" and when he called to inquire about their status he was told, "his loan was in default, that there was no record of a modification agreement and that any partial payments would be rejected." Moreover, Plaintiff continued to receive documentation from HSBC, which claimed that the loan was due for the original default. (PAC ¶¶ 18-23.)[3]

With respect to the telephone calls from PHH, it is alleged that they were made by an autodialer "because when Plaintiff answers the phone there is a pause and no person is on the other line. It takes approximately fifteen (15) seconds before an individual picks up and asks to speak to Plaintiff. (PAC ¶¶ 45-46.)

_____

[3] The Court presumes that the attempts to make payments and the calls to HSBC were made by Plaintiff although the PAC states "Defendant" took these actions.

**DISCUSSION**

I.      **Applicable Standards**

A.      **Motion to Dismiss**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between

possibility and plausibility of 'entitlement to relief.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint").  A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint).

## B. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may properly be denied on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the proposed amendment. *See Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision whether to allow a party to amend its complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).

"One appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *accord Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999). If the proposed amendment would not survive a motion to dismiss, then it is appropriately denied as futile. *Wilson*, 260 F. Supp. 2d at 535 (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002)).

## C. Ascertaining State Law

In addition to his federal claims, Plaintiff asserts claims pursuant to New York law. In ascertaining the law of New York, this Court "looks to the decisional law of [New York] as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Assoc.*, 14 F.3d 114, 119 (2d Cir. 1994). Where the state law is ambiguous or uncertain or there is an absence of

authoritative law from the state's highest court, "the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers*, 14 F.3d at 119); *accord DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). In doing so, the federal court "must give 'fullest weight' to the decisions of a state's highest court and 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 199 (quoting *Travelers*, 14 F.3d at 119). Decisions of a state's intermediate and lower courts are not binding on the federal courts. "[W]e consider the language of the state courts to be helpful indicators of how the state's highest court would rule. Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella,* 403 F.3d at 112 (internal quotations and citations omitted); *accord Zaretsky v. William Goldberg Diamond Corp.*, 820 F.3d 513, 521 (2d. Cir. 2016); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (even though the decisions of lower state courts are not controlling "where the highest court of the State has not spoken on the point," such decisions "should be attributed some weight") (internal quotation marks omitted).

## II.     THE PARTIES' CONTENTIONS

Defendants' motion is premised primarily on its contention that "the debt is not time-barred and therefore the entirety of the Plaintiff's complaint fails as a matter of law." (Defs.' Mem (DE 16) at 6.) Specifically, they argue that the debt is not time-barred because (1) it was accelerated by HSBC Mortgage and not HSBC[4]; (2) the loan was de-accelerated by the execution

---

[4] Although this argument is raised by defendants, they neither discuss it nor cite any cases to support it and therefore it will not be considered by the Court.

of the LMMA and/or HSBC's voluntary discontinuance of the foreclosure action; and/or (3) the LMMA revived the statute of limitations.. (*Id.* at 7-9.). Additionally, they argue that each claim asserted fails because Plaintiff has not plead facts sufficient to state a cause of action. (*Id.* at 9-21.).

Plaintiff responds that defendants have not established that the loan was decelerated. First, whether or not a voluntary discontinuance of a foreclosure action constitutes a de-acceleration of the loan is a question of fact, plus here the loan was accelerated by a notice. Second, the LMMA was not recorded and Plaintiff never received a copy of it back from HSBC. Third, HSBC's actions after Plaintiff signed the LMMA were inconsistent with de-acceleration. (Pl.'s Mem. in Opp. (DE 18) at 2-6.) In addition, Plaintiff argues that its proposed amended complaint cures any deficiencies in his original pleading and therefore the motion to amend should be granted. (*Id.* at 6-7.). Finally, he maintains that the documents proffered by Defendants must be disregarded. ((*Id.* at 7-10.).

## III.    PRELIMINARY MATTERS

Before turning to the arguments of the parties, two preliminary matter will be addressed.

The first matter arises from Plaintiff's proposed amended complaint. Here, Plaintiff has moved to amend his complaint, effectively abandoning his original complaint, and the parties have had an ample opportunity to address the sufficiency of the proposed amended complaint. Accordingly, the Court will grant the motion to amend the complaint and address the motion to dismiss vis a vis the amended complaint.

The second matter is whether the Court may consider the loan application and the LMMA offered by Defendants' in support of their motion. The Court would normally consider this matter prior to addressing the substance of the motion to dismiss. However, in this instance,

for reasons that should became apparent later, the Court will address whether these two documents can be considered in connection with the issues to which they relate.

## IV.    THE MOTION TO DISMISS

### A.    The First Cause Of Action Seeking A Declaration That The Note and Mortgage Are Unenforceable As Barred By The Statute Of Limitations Pursuant to Article 15 of the N.Y. RPAPL

Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL") has largely replaced the equitable action to quiet title. *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416–17 (S.D.N.Y. 2010) (citing 2–24 Warren's Weed New York Real Property § 24.01); *see also W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("New York has codified the common law action to quiet title and statutorily redefined the necessary elements for a well-pleaded remaining cloud on title complaint."). Although RPAPL Article 15 is a statutory action, 'it has been described as a hybrid one in which the relief awarded is in large measure equitable in nature.' " *Id.* (*quoting Dowd v. Ahr*, 168 A.D.2d 763, 563 N.Y.S.2d 917, 919 (3d Dep't 1990), *rev'd on other grounds*, 78 N.Y.2d 469, 577 N.Y.S.2d 198, 583 N.E.2d 911 (1991)).

As relevant here, RPAPL Article 15 provides:

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage, or to enforce a vendor's lien, has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons, known or unknown . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom. . . . In any action brought under this section it shall be immaterial whether the debt upon which the mortgage or lien was based has, or has not, been paid; and also whether the mortgage in question was, or was not, given to secure a part of the purchase price.

N.Y. R.P.A.P.L. § 1501(4). A successful Article 15 claim must set forth facts showing: (i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the

defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of the interest; (iii) whether any defendant is known or unknown, or incompetent; and (iv) whether all interested parties are named. *See id*. § 1515; *Guccione v. Estate of Guccione*, 84 A.D.3d 867, 923 N.Y.S.2d 591, 593 (2d Dep't 2011); *see also Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 513 (E.D.N.Y. 2014) (recognizing the "absence of a requirement that a plaintiff asserting a statutory quiet title claim plead 'invalidity' " of the defendant's mortgage interest).

In New York, "an action to foreclose a mortgage may be brought to recover unpaid sums . . . due within the six-year period immediately preceding the commencement of the action." *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 4542 (2d Dept. 2012) (citing N.Y. C.P.L.R. 213(4). Generally, when a mortgage is payable in installments, causes of action accrue separately for each installment that is not paid, and the statute begins to run from the respective due date for each installment. *See Phoenix Acquis. Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 141-42 (1993); *Burke*, 943 N.Y.S.2d at 542. However, even if a mortgage is payable in installments, if the mortgage debt is accelerated, the entire amount becomes due and subject to a single six-year statute of limitations. *Burke*, 943 N.Y.S.2d at 542 (collecting cases). The filing of a lis pendens and summons and complaint commencing a foreclosure action constitutes an acceleration. *See Albertina Ralty v. Rosbro Realty Corp.*, 258 N.Y. 472, 476 (1932); *Charter One Bank, FSB v. Leone*, 845 N.Y.S.d 513, 514 (3d Dept. 2007).[5]

---

[5] There is an apparent dispute among the courts as to whether it is the filing of the summons and foreclosure complaint or the service of that summons and complaint that constitutes the election to accelerate. *Compare Fannie Mae v. 133 Mgmt. LLC*, 2 N.Y.S.3d 361 (2d Dept. 2015) and *Assets Recovery Ctr. Invs., LLC v. Smith*, 2016 WL 14808096, at *2 (E.D.N.Y. Apr. 8, 2016) (filing of foreclosure action) *with Fed. Nat'l Mortg. Ass'n v. Mebane*, 618 N.Y.S.2d 88, 89-90 (2d Dept. 1994) and *Home Loan Inv. Bank v. Goodness & Mercy, Inc.*, 2012 WL 1078886, at *7 (E.D.N.Y. Mar. 30, 2012). (service of summons and complaint). In the present case, it is immaterial which event constitutes the election.

The Court declines to address Plaintiff's contention that "upon information and belief this loan was accelerated via notification" (Pls.' Mem. in Opp. at 4; Pl.'s Rep. Mem. at 2), as, Plaintiff's representation to the contrary notwithstanding, there is no such allegation in the either the Complaint or Amended Complaint. Indeed,

To stop the statute of limitations, a mortgagee who has elected to accelerate, may revoke its decision to accelerate a mortgage debt by an "affirmative act or revocation" taken within the six-year limitations period subsequent to the election to accelerate. *See Kashipour v. Wilmington Savings Fund Soc'y, FSB*, 41 N.Y.S.3d 738, 739 (2d Dept. 2016 (collecting cases).

Alternatively, the statute of limitations may be restarted if there is a written acknowledgement of the debt. N.Y Gen'l Oblig. Law § 17-101 provides:

> An acknowledgement or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

Under this provision, "[a]n acknowledgment or promise to perform a previously defaulted contract must be in writing to restart the statute of limitations." *Guilbert v. Gardner*, 480 F.3d 140, 149–50 (2d Cir. 2007). Additionally, the writing must "[i] recognize an existing debt and [ii] contain nothing inconsistent with an intention on the part of the debtor to pay it." *Clarex Ltd. v. Natixis Sec. Americas LLC*, 988 F. Supp. 2d 381, 390 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Knoll v. Datek Sec. Corp.*, 769 N.Y.S.2d 581, 582 (2d Dep't 2003)). *See also* N. Y. Gen'l Oblig. Law § 17-105 ("[A] promise to pay the mortgage debt, if made after the accrual of a right of action to foreclose the mortgage and made, either with or without consideration, by the express terms of a writing signed by the party to be charged is effective, subject to any conditions expressed in the writing, to make the time limited for commencement of the action run from the date of the . . .promise.")

---

both pleadings allege that "HSBC is bound by its declaration of acceleration of the debt with the commencement of the foreclosure action on October 6, 2009." (PAC ¶ 28; *see also id.* at ¶ 69.)

Moreover, "[i]f a written promise or acknowledgement is not unconditional but instead is contingent upon some future event, the creditor has the burden of proving that the condition has been met." *Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 312 (S.D.N.Y. 2011) (citing *Flynn v. Flynn*, 175 A.D.2d 51, 572 N.Y.S.2d 307, 309 (1st Dep't 1991)).

Having enunciated the general principles relevant to the motion to dismiss the first cause of action, the Court will now address the threshold issue of whether it may consider the LMMA. Defendants maintain that this document may be considered "because it forms the basis of the complaint/defenses." (Defs.' Mem. at 3 n.5.) Plaintiff counters that such consideration is inappropriate in this instance as he disputes "whether the modification agreement was ever accepted by the Defendants and has submitted in his first amended complaint correspondence from HSBC which supports [his] contention that the loan was never in fact modified" and he "never received a copy of the counter-signed loan modification agreements. until after the commencement of this litigation and as such is disputing the authenticity of the document." (Pl.'s Opp. Mem. at 9.)[6]

Given the specific reference in the amended complaint to "a Loan and Modification Agreement" "dated August 19, 2013" and the acknowledgement that "Plaintiff signed the Loan and Mortgage Modification Agreement," it is proper for this Court to consider that agreement. However, in considering the LMMA, the Court will, as it must, accept as true the factual allegations contained in the amended complaint regarding HSBC's conduct following execution of the agreement by Plaintiff.

---

[6] Although Plaintiff's brief refers to the "authenticity" of the LMMA, the use of authenticity is a misnomer. There is no affidavit from Plaintiff stating that the agreement submitted by Defendants is not the agreement he signed. Moreover, the amended complaint only refers to the modification not having been approved by HSBC in view of its conduct subsequent to execution.

Having determined that it may consider the LMMA, Defendants' arguments for dismissal will now be addressed. Those arguments are (1) the loan was de-accelerated by the discontinuation of the foreclosure action and/or the LMMA; and (2) the LMMA revived the statute of limitations.

The New York Court of Appeals has not addressed whether the voluntary discontinuance of a foreclosure action constitutes an affirmative act revoking a prior acceleration. Intermediate Appellate Courts in New York have held that when a mortgagee moves for and is granted an order of discontinuance, it raises a question of fact as to there was an affirmative act to revoke its election to accelerate. *See, e.g., NMNT Realty Corp. v. Knoxville 2012 Trust*, 56 N.Y.S. 3d 1068 (2d Dep.t 2017). However, where the prior foreclosure action is not withdrawn by the lender, but rather dismissed by the court, "[i]t cannot be said that [the] dismissal by the court constituted an affirmative act by the lender to revoke it election to accelerate." *Fed'l Nat'l Mortg. Ass'n v. Mebane*, 618 N.Y.S.2d88, 89-90 (2d Dept. 1994); *accord Kashipour v. Wilmington Sav. Fund Socy., FSB*, 41 N.Y.S.3d 738 (2d Dept. 2016).

Both the complaint and the amended complaint allege that "[i]n August 2013, the court dismissed the foreclosure action and vacated the notice of pendency." Although both pleadings are silent as to the basis for that dismissal, at this stage the Court must accept the allegation that the foreclosure action was dismissed "by the court" as true. Accordingly, to the extent Defendants seek dismissal of the first cause action on the basis that the dismissal of the foreclosure action was an election to revoke acceleration of the debt, the motion is denied.[7]

---

[7] Defendants assert that the foreclosure action "was voluntarily discontinued by HSBC" and that the Court may take judicial notice of the Nassau Supreme Court Appearance Docket under Index 20370/2009 because it is part of the official record. (Defs.' Mem. at 4 & n.8.). The "appearance docket" was not provided to this Court, and the only information on the New York Unified Court System "WebCivil Supreme" is an unexplained entry stating "other settlement pre-note" for August 1, 2013.

With respect to their assertion that the LMMA constituted a revocation of the acceleration of the debt, defendants cite the decision in *U.S. Bank, N.A. v. Azad*, 51 Misc.3d 1224(a), 41 N.Y.S.3d 453 (Sup. Ct. Queens County 2016). Although it is a lower court decision, this Court would agree that, generally, if a lender enters into a modification agreement subsequent to its acceleration of a debt that would constitute an affirmative act for purposes of revocation of that acceleration. Here, however, Plaintiff alleges conduct by HSBC subsequent to the LMMA that is inconsistent with revocation. Accordingly, dismissal of the RPAPL claim on the basis that acceleration was revoked is not appropriate at this juncture.

The last argument in support of the dismissal of the RPAPL claim is that the LMMA revived the statute of limitations.[8] In that agreement, Plaintiff acknowledged "a consolidated principal balance in the amount of $2,948,710.29" and "promise[d] to pay the Unpaid Principal Balance of $2,948,710.29, plus interest, to the order of Lender." (Defs.' Ex. D at p.3, ¶ 4.) After setting out, among other things, the interest rate, payment schedule, and other obligations of the Plaintiff as borrower, the agreement provides: "It is understood and agreed that, contemporaneously with the execution of this Agreement, the parties will sign Stipulations Cancelling the Notice of Pendency and Discontinuing Foreclosure Action . . . Index Number 2009-020370, including a withdrawal of the Borrower/ Defendant's Counterclaims." (*Id.* p. 5, ¶8.)

A careful review of the LMMA affirms that it restarted the statute of limitations on the mortgage debt. By its express terms, Plaintiff recognized the existing mortgage debt and promised to pay it, which promise was in writing and concededly signed by Plaintiff. The only

---

[8] Although Plaintiff complains in its reply memorandum that this assertion was not raised until Defendants' reply (*see* Pl.'s Reply at 5), in fact Defendants raised this argument in its opening memorandum in support of the motion to dismiss (*see* Defs.' Mem. at 8-9.)

contingency contained in the agreement was the dismissal of the lis pendens and foreclosure action and the amended complaint acknowledges that the foreclosure action was dismissed and the notice of pendency cancelled (*see* PAC ¶ 17).

The cases Plaintiff relies on are inapposite. For example,in *Costa v. Deutsche Bank Nat'l Trust Co*., 247 F. Supp. 3d 229 (S.D.N.Y. 2017) the question was whether the mortgagor's submission of *applications* for loan modification was an acknowledgement of the debt. That court held that the applications did not unconditionally acknowledge an intent to pay but was merely an implied offer of settlement. In *Callahan v. Credit Suisse (USA), Inc.*, the court recognized that "[u]nder § 17–101, the statute of limitations could be tolled or restarted if [the defendants] unconditionally acknowledged an intent to pay amounts due," but held that the defendants' proposed separation agreement there did not "unconditionally acknowledge" such intent because it was "clearly conditioned on [the plaintiff's] acceptance." 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011); *see also Sitkiewicz v. Cty. of Sullivan*, 256 A.D.2d 884, 681 N.Y.S.2d 677, 678–79 (3d Dep't 1998) (holding that an "offer letter was not an unconditional promise to pay a sum certain" in satisfaction of § 17–101 because it did not acknowledge the debt but "merely made an offer of settlement which [the] plaintiff never accepted").

Here, in contrast, there is a document signed by Plaintiff acknowledging the amount of the debt and promising to pay it conditioned only on dismissal of the foreclosure action and lis pendens, which condition was met. Absent from the LMMA is a requirement that it be signed by the lender and a copy returned to Plaintiff.

The motion to dismiss the first cause of action premised on the statute of limitations is granted.

**B.    The Second Cause of Action for Violation of the TCPA**

The TCPA was enacted "to protect consumers from unrestricted telemarketing, which [Congress] determined could be an intrusive invasion of privacy." *Reyes v. Lincoln Auto. Financial Servs.*, 861 F.3d 51, 55 (2d Cir. 2017) (internal quotation marks omitted). To address this problem, the act prohibits, among other things, "the making of calls 'using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a  . . . cellular telephone service . . . ."  47 U.S.C. § 227(b)(1)(A)(iii);  *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). To prove a violation of the TCPA, a plaintiff must show that a call was placed to a cell or wireless phone by the use of any automated dialing system without the prior consent of the recipient. *See Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014).

Plaintiff has alleged that PHH (1) called his cell phone to demand payments of amounts he did not owe; (2) an automated telephone dialing system was used to make  these calls as evidenced by the silence prior to a representative coming on the line; (3) the call were made to his cell phone without express consent.

Defendants maintains, however, that the claim should be dismissed because  in his loan application Plaintiff gave his express consent, in writing, to call his cell phone. Defendants have supplied the Court with a redacted version of that loan application. Plaintiff objects to consideration of this document on the basis that it is not integral to the complaint and disputes the authenticity of the document as its redaction makes it impossible to determine whether the submitted document is authentic.

As noted earlier, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.' " *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). "'Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted).

Assuming arguendo that the loan application may properly be considered, it does not warrant dismissal of the TCPA claim. It is not clear that the consent contained therein covers the telephone calls of which Plaintiff complains. *See generally Reyes*, 861 F.3d at 57-58 (distinguishing decisions in which a plaintiff consented to receive phone calls in an application from the case before it in which the plaintiff's consent was contained as an express provision of a contract to lease an automobile). Nor is it clear whether the number provided on the application was Plaintiff's home or cell phone number.

The motion to dismiss the TCPA claim is denied.

**C.    The Third Cause of Action for Violation of N.Y. Gen'l Bus. Law § 349**

Section 349 of New York's General Business Law, protects against "[d]eceptive acts or practices in the conduct of any business, trade[,] or commerce or in the furnishing of any service in" the State of New York. N.Y. Gen. Bus. Law § 349(a). "To state a prima facie claim under [Section 349], a plaintiff must allege that the defendant [i] engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015).

Defendants' seek dismissal of this claim arguing that the allegation are nothing more than conclusory allegations and recitation of the statue and Plaintiff has not alleged that the acts of which he complains have a broader impact on consumers at large. (Defs.' Mem. at 14.) Other than baldly asserting that the amended complaint cures any deficiencies in its original pleading (*see* Pl.'s Opp. Mem. passim) Plaintiff does not address this claim.[9]

The motion to dismiss the N.Y Gen. Bus. Law claim is granted on the grounds that the amended complaint fails to plead specific facts in support of this claim and does not allege that the conduct of which Plaintiff complains has a broader impact on consumers at large.

**D.    The Fourth Cause of Action for Violation of the FDCPA**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e)), "and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' " *Jacobson v.*

---

[9] Indeed, the Court notes that Plaintiff's papers only specifically address the claims under RPAPL Art. 15 and the TCPA. (*See* Pl.'s Opp. Mem.; Pl.'s Reply Mem.)

*HealthcareFinancial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "These purposes inform the FDCPA's many provisions." *Id.* Because the FDCPA is "'remedial in nature . . . its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.'" *Hartv. FCI Lender Serv., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).) Among other things, the Act prohibits debt collectors from (1) falsely representing the character, amount, or status of a debt; (2) communicating or threatening to communicate to any person credit information which is known to be false; and (3) using false representations or deceptive means to collect or attempt to collect the debt. *See* 15 U.S.C. §§ 1692e(2), (8) (10).

Defendants argue in support of dismissal of the FDCPA claim that as the mortgage debt "is not time-barred," "Plaintiff has failed to point to any deceptive or misleading practices on the Part of PHH . . . ." (Defs.'s Mem. at 15). Given that the claim is premised on the mortgage debt being time-barred and the RPAPL claim has been dismissed, the motion to dismiss the FDCPA claim is similarly granted.

### E.       The Fifth Cause of Action Alleging Slander of Credit

The fifth cause of action alleges slander of credit as a result of PPH reporting the mortgage debt as delinquent to Consumer Reporting Agencies. This claim is dismissed as preempted by the Fair Credit Reporting Act ('FCRA"). *See Macpherson v. JP Morgan Chase Bank, N.A.* 665 F.3d 45, 48 (2d Cir. 2011) (holding that FCRA preempts both state statutes and state common law action based on purported willful and malicious furnishing of false information about a plaintiff's finances to a consumer credit reporting agency); *Markovskaya v. Am. Home Mortg. Serv., Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("The Second Circuit has clearly held that state law claims such as that alleged by Plaintiff for defamation of credit are

preempted by the FCRA."). Dismissal is also appropriate given the dismissal of the RPAPL

claim and Plaintiff's abandonment of this claim by failing to address the arguments of the

Defendants.

####    F.    The Sixth Cause of Action Alleging Intentional
Infliction of Emotional Distress

"A claim for intentional infliction of emotional distress requires: '(i) extreme and

outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing,

severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

severe emotional distress' *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, -- F. Supp. 3d --,

2018 WL 1916617 (E.D.N.Y. Apr. 23, 2018) (quoting *Chanko v. Am. Broad. Companies Inc*., 27

N.Y.3d 46 (2016); *accord Stuto v. Fleischman*, 164 F.3d 820, 827 (2d Cir. 1999). As the

amended complaint contains nothing more than a formalistic recitation of these elements without

any supporting fact it fails under *IqbalI and Twombley.* Also, to the extent this claim is premised

on the same conduct as the FCRA claim, it is dismissed as preempted. The motion to dismiss the

sixth cause of action is granted.

####    G.    The Seventh Cause of Action for a Declaratory
Judgment and the Tenth Cause of Action Alleging
Violations of  TILA, RESPA and Dodd-Frank

The totality of the allegations under the seventh cause of action is as follows: "Plaintiff is

entitled to a declaratory judgment setting forth the rights of the parties to the Loan, to include but

not be limited to, whether the Loan has been extended, the actual maturity date, [and] whether

defendants have violated the Truth in Lending Act, RESPA, Dodd-Frank, FDCPA, TCPA and

New York State laws." ( PAC ¶ 124.)  The allegation supporting the tenth cause of action is

similarly barren: "By reason of the actions and inactions of the defendants and the violations of

the Truth in Lending Act, RESPA and Dodd-Frank, plaintiff and all those in a class similarly

damaged are entitled to statutory damages and attorney fees." (PAC ¶ 133.) To the extent Plaintiff is attempting to assert claims under the Truth in Lending Act, RESPA, Dodd-Frank, and unspecified State laws, the claims for a declaratory judgment and the tenth cause of action are dismissed. Plaintiff does not identify what provisions of these statutes, if any, were violated and does not specify what conduct by Defendants constitutes the purported violation. Additionally, no class has been properly pled. Finally, as Plaintiff does not address the argument for dismissal of these claims, he has abandoned them. *See, e.g., Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 470 (E.D.N.Y. 2015); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143-44 (E.D.N.Y. 2014).

  The motion to dismiss and seventh and tenth causes of action is granted

**CONCLUSION**

  For the reason set forth above, Plaintiff's motion to amend the complaint is granted and Defendants' motion to dismiss  is granted as to the first, third through seventh and tenth causes of action in the amended complaint but is otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York       s/ Denis R. Hurley
   May 2, 2018         Denis R. Hurley
               United States District Judge